**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **BERNADETTE BURNS,**<br><br>**PLAINTIFF,**<br><br>**v.**<br><br>**PROPEL INSURANCE AGENCY, LLC,**<br><br>**and**<br><br>**ALERA GROUP, INC.,**<br><br>**DEFENDANTS.** | **Civil Action No. ____________**<br><br>**JURY TRIAL DEMANDED** |

**COMPLAINT AND JURY DEMAND**

Plaintiff Bernadette Burns, by and through her attorneys, Bell & Bell LLP, hereby files the following Complaint and Jury Demand ("Complaint").

**PRELIMINARY STATEMENT**

1. This is an action for an award of damages and other relief on behalf of Plaintiff Bernadette Burns (hereinafter "Plaintiff" or "Ms. Burns"), a former employee of Propel Insurance Agency, LLC, (hereinafter "Propel Insurance") and Alera Group, Inc. ("Alera Group") (collectively, "Defendants"). Despite her loyalty and consistent performance, Ms. Burns was subjected to discrimination and harassment on the basis of her age and retaliation for complaining about discrimination and harassment, culminating in her wrongful termination on December 5, 2025.

2. This action arises under the Age Discrimination in Employment Act, 29 U.S.C. § 621 et seq. ("ADEA").

## JURISDICTIONAL STATEMENT

3. This Court has original jurisdiction over all civil actions arising under the Constitution, laws or treaties of the United States pursuant to 29 U.S.C. §§ 1331 and 1391.

4. The jurisdiction of this Court is also invoked pursuant to 28 U.S.C. § 1343(4), which grants the District Court original jurisdiction in any civil action authorized by law to be commenced by any person to recover damages to secure equitable or other relief under any act of Congress providing for the protection of civil rights.

5. This Court has supplemental jurisdiction over any Pennsylvania state law claims pursuant to 28 U.S.C. § 1367.

6. All conditions precedent to the institution of this suit have been fulfilled. On June 1, 2026, Plaintiff timely filed a Charge of Discrimination with the United States Equal Employment Opportunity Commission ("EEOC"), which was dual-filed as a Complaint with the Pennsylvania Human Relations Commission ("PHRC"). On June 8, 2026, the EEOC issued a Notice of Right to Sue to Plaintiff. This action has been filed within ninety (90) days of Plaintiff's receipt of said Notice.[1]

## VENUE

7. This action properly lies in the Eastern District of Pennsylvania, pursuant to 28 U.S.C. § 1391(b).

[1] It has been less than one year since Ms. Burns dual-filed her Charge of Discrimination as a Complaint with the Pennsylvania Human Relations Commission for Defendants' violations of the Pennsylvania Human Relations Act, 43 P.S. § 951, et seq. ("PHRA"). Ms. Burns will seek to amend her Complaint in this matter to add her PHRA claims once it has been greater than one year since her dual-filing.

8. This action properly lies in the Eastern District of Pennsylvania because significant activities associated with the claims alleged took place in this jurisdiction and because Plaintiff was employed and terminated by Defendants in this jurisdiction.

## PARTIES

9. Plaintiff Bernadette Burns is an adult female citizen and resident of Southampton, Pennsylvania and the United States of America.

10. Ms. Burns is sixty-one years old and within the class of individuals protected against discrimination by the ADEA.

11. At the time of her termination, Ms. Burns was sixty-one years old.

12. Defendant Propel Insurance Agency, LLC, is an Alera Group company with a corporate office located at 1201 Pacific Avenue, Suite 1000, Tacoma, Washington 98402.

13. Defendant Alera Group, Inc., is an insurance and financial services firm, with a corporate headquarters at 3 Parkway North, Suite 500, Deerfield, Illinois 60015.

14. Plaintiff worked remotely for Defendants from her home in Southampton, Pennsylvania.

15. At all relevant times, Defendants are and have been employers employing more than 500 employees.

16. At all relevant times, employees of Defendants acted as agents and servants for Defendants.

17. At all relevant times, employees of Defendants were acting within the scope of their authority and in the course of their employment under the direct control of Defendants.

18. At all times material hereto, Defendants acted by and through their authorized agents, servants, workmen and/or employees acting within the course and scope of their employment with Defendants and in furtherance of Defendants' business.

19. At all relevant times hereto, Plaintiff was an "employee" of Defendants within the meanings of the laws at issue in this suit and is accordingly entitled to the protection of said laws.

20. At all relevant times hereto, Defendants each were an "employer" and/or "person" under the laws at issue in this matter and are accordingly subject to the provisions of said laws.

21. This Honorable Court has jurisdiction over the Defendants.

## **FACTS**

22. On or about June 13, 2022, Ms. Burns was hired by Propel Insurance, an Alera Group company, in the position of Account Executive.

23. Throughout her employment, Ms. Burns performed her duties in an excellent and hardworking manner.

24. Despite her dedication and exemplary performance, Ms. Burns was discriminated against and harassed on the basis of her age and retaliated against for complaining about discrimination and harassment, culminating in her wrongful termination on December 5, 2025.

25. Ms. Burns was initially assigned to the Middle Market division at Propel Insurance. In her position, she successfully managed a book of business of up to $1,000,000 with the support of an assistant.

26. Throughout her employment, Ms. Burns continued to excel in her position.

27. In November 2023, she was presented with a prestigious base two award, the highest customer service award at the company.

28. Confusingly, the very next day after receiving this award, Ms. Burns was called into a meeting and informed she was being placed on a Performance Improvement Plan (PIP).

29. Given Ms. Burns' excellent performance, the PIP was a shock and demonstrably unwarranted.

30. In fact, as soon as upper management learned of the PIP, they put an end to it and the PIP was removed.

31. Ms. Burns was then invited to move to the Construction team, which carried a similar portfolio value and included the support of an assistant.

32. After being transferred to Construction, Ms. Burns was assigned a new book of business with a value of approximately $900,000.

33. However, Ms. Burns' assistant was subsequently promoted, leaving her without support.

34. Shortly after, a task force was introduced to issue certificates and complete small assignments that did not require an insurance license to execute.

35. Ms. Burns was then informed that her assistant would not be replaced, and instead assistant assignments would be allocated to the task force.

36. Ms. Burns was also informed that her book of business would increase to $1,500,000, but she would still not be provided any support staff.

37. This left Ms. Burns with a considerable workload and inadequate support, as the task force had significantly less capabilities than her assistant.

38. She was consequently now expected to take on all aspects of the business, including marketing, producing and administrative work, in addition to her normal and increased workload of insurance sales.

39. Due to this expansion of assignments and the simultaneous lack of support, Ms. Burns soon found herself forced into a position where it was extremely difficult to complete her assigned workload.

40. The work was further complicated by the refusal of clients to provide Ms. Burns with the information she needed in a timely manner, resulting in Ms. Burns often having to scramble at the last minute to complete her tasks.

41. Rather than provide Ms. Burns with the support she needed, Defendants instead turned the blame on Ms. Burns.

42. For example, in October 2025, Ms. Burns had several client accounts she needed to renew.

43. On October 3, 2025, Ms. Burns received an email from Sean DeVries, Sales Executive, asking if the work had been completed.

44. Ms. Burns was in the process of assembling the client binders and sending all the invoice certificates of insurance to the clients and relevant stakeholders, and she informed Mr. DeVries that she was still working on the assignments.

45. Ms. Burns then proceeded to detail the progress she had made for each account.

46. Four days later, on October 7, 2025, Ms. Burns met via Zoom with Mr. DeVries and Ms. Burns' manager Sara Sellin, Construction Account Executive.

47. During this meeting, Mr. DeVries and Ms. Sellin accused Ms. Burns of "spiraling out of control."

48. Ms. Burns explained that she was not "spiraling" but that she was trying to do her best for the client and ensure that all the work was completed accurately and in a timely fashion.

49. During this conversation, Ms. Burns shared that she billed a client because it may have been related to a true-up.

50. At that point, Mr. DeVries became extremely angry and began verbally assaulting Ms. Burns, yelling and cursing at her.

51. A few weeks later, on October 22, 2025, Ms. Burns met with Ms. Sellin and Becky Herron, Sr. Director, Human Resources.

52. At the start of the call, Ms. Herron stated, "we are here because Sara has discussed with you in the past that you are failing."

53. Ms. Burns was surprised by this allegation and stated that Ms. Burns and Ms. Sellin's discussions pointed to the contrary, as their one-on-one calls were always positive and complimentary.

54. Ms. Herron asked Ms. Sellin if that was correct, and Ms. Sellin confirmed that it was.

55. Despite this, Ms. Sellin stated that "the only option" was to reduce Ms. Burns' salary and reduce the size of her book of business.

56. Ms. Burns responded that she could manage the size of her current book of business.

57. Ms. Burns has been working in the insurance industry for approximately forty-three (43) years, and for much of that time, she had successfully managed a $2,500,000 New York construction book of business.

58. However, Ms. Burns had always received support.

59. Meanwhile, since her move to the Construction account, Ms. Burns had been deprived of any assistance.

60. This refusal by management to provide Ms. Burns with any support was unusual and was contrary to the treatment and support that her younger colleagues received.

61. On November 6, 2025, Ms. Burns and Ms. Sellin met one-on-one to again discuss Ms. Burns' workload.

62. During the meeting, Ms. Sellin stated that she was reluctant to increase Ms. Burns' book of business due to her "poor performance."

63. Specifically, Ms. Sellin alleged that producers, clients, and carriers were complaining about Ms. Burns.

64. Ms. Burns was extremely confused about this allegation, as she had received direct feedback demonstrating the opposite.

65. Indeed, Ms. Burns had received many emails from these exact parties in which they thanked and praised her for her work.

66. When Ms. Burns asked who specifically had complained about her, Ms. Sellin side-stepped the question and did not answer.

67. She then vaguely stated that she would "get laughed out of the office" if she went to Mike Mansfields, Sales Executive, and told him that Ms. Burns would manage his book of business.

68. Though Ms. Burns was already highly dedicated to her work and capable of managing a larger book of business, Ms. Burns offered to work longer hours and start her assignments sooner to better show her capabilities.

69. However, Ms. Sellin refused to accept Ms. Burns' offers.

70. Ms. Burns then learned that the company was hiring a new Senior Account Manager, Sierra Shore, who was significantly younger than Ms. Burns.

71. When Ms. Burns asked Mr. DeVries if Ms. Shore was being hired to replace her, Mr. DeVries did not deny it, and only responded vaguely that it would take about one month to train Ms. Shore, and that she was a referral from Mr. Mansfield.

72. Around this time, Ms. Burns also began noticing that her manager, Ms. Sellin, was being copied on emails sent to Ms. Burns from both higher and lower ranking employees, undermining her authority and independence in her work.

73. Shortly thereafter, Ms. Burns reported her concerns that she was being subjected to discrimination, harassment and differential treatment on the basis of her age.

74. Specifically, Ms. Burns complained to Defendants that she was alarmed by the treatment she had received over the past several months, including the unwarranted criticism of her work, disregard for her experience, and demeaning conduct towards her.

75. Ms. Burns further stated her belief that she was being targeted due to her age, given the treatment she was receiving compared to her younger colleagues.

76. Ms. Burns then requested that the situation be reviewed by Human Resources.

77. Rather than investigate Ms. Burns' complaint, however, Defendants instead terminated Ms. Burns' employment on December 5, 2025.

78. The timing of Ms. Burns' termination is highly suspect given the short proximity in time between Ms. Burns' complaint of age discrimination and harassment and her termination.

79. In light of the circumstances outlined above, given her treatment during her employment with Defendants and the circumstances surrounding her termination, Ms. Burns maintains that she was discriminated against and harassed on the basis of her age and retaliated against for complaining about discrimination and harassment.

80. Ms. Burns has suffered mental anguish and severe emotional distress as a direct and proximate result of the actions and inactions of Defendant.

81. Defendants and their agents acted with the intent of causing or with reckless disregard for the probability that their actions would cause Ms. Burns severe emotional distress.

82. Ms. Burns has suffered financial losses, which include, among other things, lost wages, and an obligation for attorneys' fees and costs of bringing suit, as a direct and proximate result of the actions and inactions of Defendant.

**COUNT I**
**Age Discrimination in Employment Act, 29 U.S.C. § 621, et seq.**

83. Plaintiff Bernadette Burns repeats and incorporates by reference the allegations of all preceding paragraphs as if fully set forth at length herein.

84. Based on the foregoing, Defendants have engaged in unlawful employment practices in violation of the ADEA.

85. Plaintiff is, and was at the time of her termination, over forty years of age, and was an individual within the class protected by the Age Discrimination in Employment Act.

86. In discriminating against and harassing Ms. Burns because of her age, and in retaliating against Ms. Burns because of her complaints about discrimination and harassment, Defendants violated the Age Discrimination in Employment Act.

87. Defendants' violations were intentional and willful.

88. Defendants' willful violations of the ADEA warrant an award of liquidated damages.

89. As the direct and proximate result of Defendants' violation of the Age Discrimination in Employment Act, Plaintiff Bernadette Burns has sustained loss of earnings, severe emotional and psychological distress, loss of self-esteem, loss of future earning power, as well as back pay, front pay, and interest due thereon, and has incurred attorneys' fees and costs.

**PRAYER FOR RELIEF**

90. Plaintiff Bernadette Burns repeats and incorporates by reference the allegations of all preceding paragraphs as if fully set forth at length herein.

**WHEREFORE**, Plaintiff Bernadette Burns respectfully requests that this Court enter judgment in her favor and against Defendants Propel Insurance Agency, LLC, and Alera Group, Inc., and Order:

a. Appropriate equitable relief, including reinstatement or front pay;

b. Defendants to compensate Plaintiff with a rate of pay and other benefits and emoluments of employment to which she would have been entitled had she not been subjected to unlawful discrimination, harassment, and wrongful termination;

c. Defendants to compensate Plaintiff with the wages and other benefits and emoluments of employment lost because of Defendants' unlawful conduct;

d. Defendants to pay Plaintiff liquidated damages;

e. Defendants to pay Plaintiff compensatory damages for future pecuniary losses, pain and suffering, inconvenience, mental anguish, loss of employment and other nonpecuniary losses as allowable;

f. Defendants to pay Plaintiff's costs of bringing this action, including, but not limited to, Plaintiff's attorneys' fees;

g. Plaintiff be granted any and all other remedies available under the ADEA; and

h. Such other and further relief as this Court deems just and proper.

**JURY DEMAND**

Plaintiff Bernadette Burns hereby demands trial by jury as to all issues so triable.

BELL & BELL LLP

By: *<u>/s/ Christopher A. Macey, Jr.</u>*

Christopher A. Macey, Jr., Esquire
One Penn Center
1617 JFK Blvd. – Suite 1254
Philadelphia, PA 19103
(215) 569-2285

*Attorneys for Plaintiff Bernadette Burns*

Dated: September 4, 2026